IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SARAH D. SOARES; HERMAN S.
SOARES; and MARY PAUL SOARES                               PLAINTIFFS

v.                                         CAUSE NO. 1:18cv276-LG-RHW

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and DOE
DEFENDANTS 1-6                                             DEFENDANTS

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION TO STRIKE

BEFORE THE COURT are two motions: the [26] Motion for Summary Judgment filed by Defendant State Farm Mutual Automobile Insurance Company ("State Farm") and the [47] Motion to Strike State Farm's Motion for Summary Judgment, Motions to Strike, and Attached Exhibits filed by Plaintiffs Sarah D. Soares, Herman S. Soares, and Mary Paul Soares. The Motion for Summary Judgment argues that State Farm is entitled to summary judgment on all of Plaintiffs' claims because the undisputed material facts do not support their claims for bad faith delay in making policy payments. Insofar as Plaintiffs' claim concerning State Farm's refusal to assist them in their pursuit of legal action against Noel Dimarco, Michael Dimarco, and Sharon Dimarco, State Farm contends that it was never under a duty to do so.

Plaintiffs' Motion to Strike asserts that none of the exhibits to State Farm's summary judgment motion can be properly considered because they are unauthenticated and otherwise inadmissible, leaving only unsubstantiated

allegations in the memorandum brief. Both motions are fully briefed. Having considered the submissions of the parties, the record, and relevant law, the Court concludes that State Farm is entitled to summary judgment. Plaintiffs' Motion to Strike will be denied, and Plaintiffs' claims will be dismissed.

I. BACKGROUND

Plaintiffs Sarah D. Soares, Herman S. Soares, and Mary Paul Soares filed this lawsuit in the Circuit Court of Harrison County, Mississippi against Defendant State Farm, the plaintiffs' insurer, and Noel Dimarco, Michael Dimarco, and Sharon Dimarco, the alleged tortfeasors. Plaintiffs allege that Sarah Soares was injured in a motor vehicle accident caused by underinsured individuals – the Dimarcos – and that State Farm willfully failed to provide prompt payment due under Plaintiffs' uninsured/underinsured motorist ("UM") policy. Plaintiffs also seem to claim that the UM policy obligates State Farm to assist Plaintiffs in pursuing tort claims against the Dimarcos. Because the Court found the contractual claims against State Farm had been improperly joined with tort claims against the Dimarcos, the Court severed and remanded the tort claims.[1] (*See* Order Granting in Part and Den. in Part Mot. Remand, ECF No. 16.)

On April 25, 2019, State Farm filed the instant Motion for Summary Judgment.[2] The Motion argues (1) the material facts are not in dispute, (2) State

---

[1] Applying Mississippi Rule of Civil Procedure 20, the Court determined that the claims against the Dimarcos and the claims against State Farm were distinct litigable events.
[2] State Farm also filed two motions to strike Plaintiffs' experts (Mot. Strike Expert Designation of Dr. Joseph T. Lyons, ECF No. 28; Mot. Strike Expert Designation of

Farm paid Sarah Soares the policy limits of Plaintiffs' stacked UM coverage plus medical payments coverage ("MPC"), (3) State Farm did not unreasonably delay payment of the policy limits to Sarah, and (4) there is no contractual or legal duty for State Farm to help Plaintiffs pursue their tort claims against the Dimarcos. In response,[3] Plaintiffs do not dispute that State Farm ultimately paid the policy limits, but they contend that State Farm's failure to immediately accept that Sarah – a college student at the time – was covered by the policy and that the policy limits stack under Mississippi law constituted a bad faith delay in making policy payments. Plaintiffs maintain that State Farm delayed its agreement to settle all claims with the Dimarco's insurer and its waiver of subrogation rights, which consequently delayed UM payments for nineteen months. Furthermore, Plaintiffs assert that State Farm shirked its obligation to share with Plaintiffs the addresses at which the Dimarcos could be served with process and the location of valuable assets belonging to the Dimarcos.

On June 6, 2019, Plaintiffs filed their Motion to Strike State Farm's Motion for Summary Judgment, Motions to Strike, and Attached Exhibits. Plaintiffs' Motion argues that State Farm's motions, memoranda, and exhibits are based "on inadmissible, incompetent, improper false contentions and unauthenticated documents and exhibits . . . and incompetent, improper, false contentions of [State

---

John G. Corlew, ECF No. 30), but the Court need not resolve these motions in order to rule on the summary judgment motion.

[3] Plaintiffs' briefing on this and other motions is rambling, disorganized, and littered with needless emphasis in the form of bold, underlined, and italicized text of various fonts and sizes. The Court has done its best to parse out and decipher the separate arguments Plaintiffs raise.

– 3 –

Farm]'s counsel without any personal knowledge." (Pls.' Mem. Supp. Mot. Strike 1, ECF No. 48 (emphasis and quotation marks omitted).) State Farm responds that, at the summary judgment stage of litigation, exhibits need only be capable of being presented in a form that would be admissible in evidence, and State Farm's filings meet this standard.

## II. DISCUSSION

a. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671

F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

b. <u>Plaintiffs' Motion to Strike</u>

The Court first addresses Plaintiffs' Motion to Strike. Federal Rule of Civil Procedure 56 provides that factual assertions made in support of or in opposition to summary judgment must be supported by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Thus, the material cited to at summary judgment must "be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)).

Under the standard of Rule 56, Plaintiff's arguments for striking the documents that State Farm relies upon in its Motion for Summary Judgment miss the mark. State Farm attached the following exhibits to its summary judgment motion: (1) notes made in the file maintained for Sarah Soares' UM claim, (2) a letter from Plaintiffs' counsel to State Farm dated May 21, 2015, (3) a letter from State Farm to Plaintiffs' counsel dated May 27, 2015, (4) a demand letter from Plaintiffs' counsel to State Farm dated October 7, 2016, and (5) a copy of Plaintiffs' UM policy with State Farm.

Insofar as the claim file is concerned, the document would likely be admissible under the Record of a Regularly Conduct Activity exception to the hearsay rule (frequently referred to as the "business record exception"). *See* Fed. R. Evid. 803(6). There are otherwise plenty of individuals – Plaintiffs' counsel included – who could testify to the events recorded in the claim file. The same is true of the letters sent between State Farm and Plaintiffs' counsel. Plaintiffs' UM policy could easily be authenticated by a number of State Farm employees. Perhaps most importantly, Plaintiffs offer nothing besides conclusory assertions that these exhibits are in admissible. They do not seriously contend that the facts contained within these records are inaccurate and, in fact, rely on them in their own briefing. They do not even contest the facts as laid out by State Farm, only the conclusions drawn from those facts. Plaintiffs' Motion to Strike will therefore be denied.

  c. <u>State Farm's Motion for Summary Judgment</u>

      i. <u>The Material Facts Are Not in Dispute</u>

Turning to State Farm's Motion for Summary Judgment, the Court will begin with a recitation of the material facts in evidence. Sarah Soares, a college student, was injured in an automobile accident with the Dimarcos on April 15, 2015. At the time of the accident, Sarah's parents, Herman and Mary, possessed a UM policy through State Farm. The policy provided $50,000 of coverage for each of four vehicles and $5,000 in MPC.

State Farm opened a claim file for this accident on May 4, 2015. The claim file notes indicate that by May 21, 2015 State Farm had determined that Sarah was

– 6 –

a household resident covered by the UM policy and that Mississippi law provides for stacking of coverage. (Mot. Summ. J. Ex. A, at 35, ECF No. 26-1 (ECF pagination).) Also on May 21, 2015, Plaintiffs' counsel, Matt G. Lyons, faxed State Farm a letter requesting "any and all other investigative information which State Farm has obtained re: the subject of this 4-15-15 MVA, including, but not limited to, full true copies of all statements obtained, . . . Noel L. DIMARCO's Driving Record, [and] Noel L. DIMARCO's Marriage Records (and Divorce Record, if any)." (*Id.* Ex. B, at 1, ECF No. 26-2 (emphasis omitted).) This letter also made Plaintiffs' "sixth request that State Farm provide [Plaintiffs] with consent to settle all claims with Progressive and DIMARCO . . . and State Farm's waiver of subrogation rights versus Progressive, DIMARCO, and the Soares . . . ." (*Id.* (emphasis omitted).)

State Farm's claim file note from May 22, 2015 acknowledges Mr. Lyons' request for State Farm to investigate the Dimarcos. (*Id.* Ex. A, at 32-33, ECF No. 26-1 (ECF pagination).) By May 26, 2015, State Farm had determined that Sarah was likely to exhaust the MPC limit and that the Dimarcos had minimum bodily injury limits on their insurance coverage. (*Id.* at 29.) State Farm sent Mr. Lyons a letter dated May 27, 2015, which stated (1) that State Farm is only able to communicate with Mr. Lyons via telephone, fax, or postal mail, (2) that documents received by State Farm take 1-4 business days to reach the assigned case handler, (3) Sarah is covered by the UM policy and Mississippi allows stacking of UM coverage, (4) neither State Farm nor Progressive (the Dimarco's insurer) questions Noel Dimarco's complete liability, (5) that State Farm was prepared to waive

– 7 –

subrogation rights specific to the MPC, and (6) that State Farm will further consider the request for the right to settle with Progressive once Mr. Lyons forwards to State Farm an offer from Progressive for Noel Dimarco's liability limits. (*Id.* Ex. C, at 1-2, ECF No. 26-3.)

State Farm's claim file indicates that State Farm gave Plaintiffs authorization to settle with Progressive for the limits of Noel Dimarco's policy on May 28, 2015. (*Id.* Ex. A, at 24, ECF No. 26-1 (ECF pagination).) State Farm also sent a letter asking for a signed Authorization for Release of Information ("ARI") concerning Sarah Soares medical treatment documentation. (*Id.*) On June 30, 2015, State Farm contacted Mr. Lyons to inform him that the ARI had yet to be received. (*Id.* at 21.) On November 20, 2015, Mr. Lyons left a voicemail with someone at State Farm stating that Sarah was still in treatment and a demand would be made when he was ready to do so. (*Id.* at 15.) State Farm reached out to Mr. Lyons via telephone and snail mail to request an update on Sarah's status on January 11, 2016, March 11, 2016, and June 4, 2016. (*Id.* at 12-14.)

In a letter dated October 7, 2016, Mr. Lyons made a demand for payment of the stacked UM policy limits plus MPC limits, as offset by the $25,000 paid to the Soares by Progressive. (*Id.* Ex. D, ECF No. 26-4.) He attached documentation supporting the policy limits demand. The claim file reflects that on October 21, 2016, Stephanie Ndguwa – the State Farm case agent handling Sarah's UM and MPC claims – spoke with Mr. Lyons regarding the demand letter and explained that she had just received the demand and documentation in the claim file that day.

– 8 –

(*Id.* Ex. A, at 12, ECF No. 26-1 (ECF pagination).)  She asked for two weeks to review the demand and said that a signed ARI was no longer necessary given the documentation provided.  (*Id.*)  Mr. Lyons agreed to the two-week review period.  (*Id.*)

Notes from November 1, 2016 and November 3, 2016 reflect that State Farm had received sufficient bills to exhaust MPC limits and that State Farm had determined Sarah was entitled to the UM policy limits minus the offset of the Progressive payment.  (*Id.* at 9.)  On November 4, 2016, Mr. Lyons agreed to settle with State Farm for $180,000 – the $200,000 UM policy limits, plus the $5,000 MPC limits, minus the $25,000 already paid by Progressive.  (*Id.* at 8-9.)

The evidence submitted by Plaintiffs does not contradict or otherwise call into question this factual timeline.  Rather, Herman Soares' affidavit takes issue with (1) State Farm's failure to send a representative to assist and investigate in person despite the more than 40 years during which the Soares maintained various insurance policies through State Farm, (2) the personal hardship suffered by Plaintiffs as a result of Sarah's injuries, and (3) State Farm's refusal to further investigate the circumstances of the car accident and assist Plaintiffs in pursuing tort claims against the Dimarcos.  (Affidavit of Herman Soares 2-4, ECF No. 15.)

John Corlew, submitted as an expert in insurance claim handling processes, opines that

> an adjuster resident in the State of Nebraska with a post office address in Atlanta, Georgia does not have adequate access to conduct a reasonable investigation of a motor vehicle collision in Biloxi, Mississippi nor to properly

– 9 –

>assess the injuries and other damage suffered by a person in such a collision, nor to understand the requirements of claims handling of uninsured motorist claims under Mississippi law.

(Expert Report John Corlew 6, ECF No. 30-6.) Mr. Corlew goes on to opine that the State Farm claims file reflects "no substantial evaluation of Ms. Soares' claim for the 19 months from the date of accident until the November, 2016 payment of the benefits due" and that "the delay of nineteen months cannot be justified by the facts reasonably known to State Farm with respect to this crash and the injuries to Ms. Soares." (*Id.* at 6-7.) Dr. Joseph Lyons, offered as an expert in accounting, finance, business, and operations management principles, provides opinion testimony only relevant to the issue of damages. (*See* Expert Report Dr. Joseph Lyons, ECF No. 28-6.) The material facts are thus not in dispute.

ii. <u>Plaintiffs Have Failed to Establish a Claim for Relief</u>

The parties agree that Mississippi state law applies to the claims in this diversity case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Plaintiffs' first claim is that State Farm tortiously acted in bad faith when it delayed payment on Sarah's UM claim for 19 months. "Mississippi law imposes on insurers a duty to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation, and insurers may be liable for punitive damages for denying a claim in bad faith." *Dey v. State Farm Mut. Auto. Ins. Co.*, 789 F.3d 629, 633 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Broussard v. State Farm Fire & Cas. Co.,* 523 F.3d 618, 627 (5th Cir. 2008); *Liberty Mut. Ins. Co. v. McKneely,* 862 So. 2d 530, 535 (Miss. 2003)). "[A] bad faith refusal

– 10 –

claim is an 'independent tort' separable in both law and fact from the contract claim asserted by an insured under the terms of the policy." *Spansel v. State Farm Fire & Cas. Co.,* 683 F. Supp. 2d 444, 447 (S.D. Miss. 2010) (alteration in original) (quoting *Hartford Underwriters Ins. Co. v. Williams,* 936 So.2d 888, 895 (Miss. 2006)).

"The Mississippi Supreme Court has recognized that claimants can bring bad faith claims against and recover punitive damages from insurers who refuse to pay out on a valid claim." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (citing *Caldwell v. Alfa Ins. Co.,* 686 So. 2d 1092, 1098 (Miss. 1996) (holding that denial of a valid insurance claim is critical for the submission of punitive damages to a jury)). Mississippi courts also permit claimants to recover damages on bad faith claims when resolution of an insurance claim is merely delayed rather than ultimately denied, but courts "are skeptical of such claims." *Id.* (collecting Mississippi cases). "[W]hether to submit a delay-of-payment claim to a jury is a highly fact-sensitive analysis." *Id.* at 70.

"To establish a claim for punitive damages in the context of a bad faith claim, [the plaintiff] must establish three factors: 1) State Farm had a contractual obligation to her; 2) State Farm lacked an arguable or legitimate basis for its delay in paying her claim; and 3) State Farm's failure resulted from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *Id.* (citations and internal quotation marks omitted). Because whether an insurer possessed an arguable or legitimate reason for delay in payment is a question of law, it is a preliminary issue that must be decided by the trial judge. *Id.*

– 11 –

(citing *U.S. Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992); *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232-33 (Miss. 2001)).

> "Arguable reason is defined as nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort." *Caldwell,* 686 So. 2d at 1096 (citation and internal quotation marks omitted). The initial burden placed on the insurer is low: it "need only show that it had reasonable justifications, either in fact or in law" for its actions. *Wigginton,* 964 F.2d at 492 (citation omitted). Once an insurance company articulates an arguable or legitimate reason for its payment delay, the insured bears the burden of demonstrating that the insurer had no arguable reason. *Caldwell,* 686 So. 2d at 1097. "The plaintiff's burden in this respect likewise exists at the summary judgment stage where the insurance company presents an adequate prima facie showing of a reasonably arguable basis for denial so as to preclude punitive damages." *Id.* at 1097 n.1 (citation omitted).

*Id.* Whether a claimant has proven an insurer acted without a reasonable or arguable basis is determined by a preponderance of the evidence. *Id.*

State Farm submits that the undisputed evidence demonstrates the 19-month delay between Sarah Soares' injury and State Farm's payment of the UM and MPC policy limits was due to the length of Sarah's medical treatment and Mr. Lyon's related decision to wait until October 2016 to submit a formal demand letter. The four weeks required to review the file, says State Farm, was the result of Mr. Lyon's decision to submit voluminous records all at once with the formal demand. The record supports State Farm's explanation. Plaintiffs argue that State Farm wrongly denied at first that Sarah was legally a household member covered by the

UM policy. And Plaintiffs similarly say that State Farm took too long to determine that Mississippi law allows for the stacking of UM policies. But, even if true, State Farm determined both her covered status and the stacking of UM policies by May 21, 2015 at the very latest – only 17 days after being notified of the claim – and confirmed these determinations by letter dated May 27, 2015. This same letter expressed that State Farm agreed Noel Dimarco was entirely at fault for the accident and that he was underinsured, but State Farm needed to see Progressive's offer to settle with Sarah for the limits of Noel Dimarco's insurance policy before State Farm could waive subrogation as to any claim against Progressive. The next day, May 28, 2015, State Farm authorized Plaintiffs to settle with Progressive.

State Farm then asked for a signed ARI and, after Mr. Lyons communicated that Sarah was still in treatment as of November 2015, State Farm repeatedly attempted to contact Mr. Lyons to find out about the status of her treatment. Mr. Lyons did not contact State Farm until October 7, 2016 when he finally made a demand for payment of the policy limits. State Farm paid the policy limits in full 28 days later on November 4, 2016. Under these facts, the Court must conclude that State Farm "ma[d]e a reasonable effort to secure all medical records relevant to the claim." *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 204 (Miss. 2002).

In sum, State Farm made liability and coverage determinations within four weeks of Sarah making a claim. The extent of her damages was unknown until Mr. Lyons made a demand for the policy limits. He could have executed an ARI sooner or provided incomplete documentation as it arose, but the record reflects that he

waited until October 7, 2016 to provide State Farm with substantial documentation of Sarah's injuries and treatment. Mr. Lyons submitted voluminous records for State Farm's consideration, which appears to be confirmed by Mr. Lyons' acquiescence to State Farm's request for an additional two weeks (making for a total of four weeks) to review the demand. *See Caldwell,* 686 So. 2d at 1098 (affirming grant of summary judgment where insurance company delayed payment for three months in complex wrongful death claim, including a six-week delay after it completed its investigation). The Court must therefore conclude that State Farm had an arguable, legitimate basis for its delay in paying Sarah's UM claim. Plaintiffs' bad faith claim fails as a matter of law.

Plaintiffs' second claim is that State Farm failed in its duty to further investigate the Dimarcos and assist Plaintiffs in their desire to pursue legal action against the Dimarcos. Specifically, Plaintiffs assert that State Farm should have shared the addresses of the Dimarcos and the location of any assets the Dimarcos possess. State Farm argues that it owes Plaintiffs no such duty – either under the terms of the UM policy or otherwise by law – to help them investigate and pursue a claim against a third party. Plaintiffs seem to argue that State Farm's contractual right of subrogation somehow obligates State Farm to pursue claims on Plaintiffs' behalf. But this is not so. As previously mentioned, State Farm's obligation under Mississippi law was "to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation." *Dey*, 789 F.3d at 633. Here, the Court has already determined that State Farm satisfied this burden by

paying the UM and MPC policy limits to Sarah Soares. The Court can find no provision of the UM policy obligating State Farm to undertake the investigative duty argues by Plaintiffs. (*See* Mot. Summ. J. Ex. E, ECF No. 26-1.) And Plaintiffs point to no such language.

> Any failure to investigate the accident or correspond with [the Soares] did not result in any nonpayment of policy benefits. [State Farm] paid all of the claims under the [Soares'] policy and has therefore lived up to its end of the bargain. To impose an additional duty would, in effect, be rewriting the insurance contract.

*Sessoms v. Allstate Ins. Co.*, 634 So. 2d 516, 520 (Miss. 1993); *see also Jordan v. State Farm Mut. Auto. Ins. Co.*, 774 F. Supp. 424 (S.D. Miss. 1991).

### III. CONCLUSION

Because the undisputed facts do not support a claim for relief against State Farm, State Farm is entitled to summary judgment against Plaintiffs' claims. Plaintiffs' Motion to Strike will be denied, State Farm's Motion for Summary Judgment will be granted, and the remaining motions are accordingly rendered moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [26] Motion for Summary Judgment filed by Defendant State Farm Mutual Automobile Insurance Company is **GRANTED** and the [47] Motion to Strike State Farm's Motion for Summary Judgment, Motions to Strike, and Attached Exhibits filed by Plaintiffs Sarah D. Soares, Herman S. Soares, and Mary Paul Soares is **DENIED**. Plaintiffs' claims against State Farm are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDRED AND ADJUDGED** that the [28] Motion to Strike Expert Designation of Dr. Joseph T. Lyons and the [30] Motion to Strike Expert Designation of John G. Corlew filed by Defendant State Farm Mutual Automobile Insurance Company are **MOOT**.

**SO ORDERED AND ADJUDGED** this the 27th day of June, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE